UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| HEK, LLC, d/b/a Kinneberg Management Group, | Case No. 20-CV-1881 (NEB/LIB) |
| Plaintiff, | ORDER ON MOTION TO DISMISS |
| v. | |
| AKSTROM IMPORTS, INC., | |
| Defendant. | |

Defendant Akstrom Imports, Inc. ("Akstrom") contracted with Plaintiff HEK, LLC, doing business as Kinneberg Management Group ("KMG"), for KMG to act as an intermediary between Akstrom and several retail corporations. KMG alleges that it earned commissions that Akstrom now refuses to pay. This matter is before the Court on Akstrom's Motion to Dismiss. (ECF No. 7.) For the reasons that follow, Akstrom's motion is denied.

## BACKGROUND

KMG is a Minnesota company that acts as a sales representative for independent manufacturers. (ECF No. 1-1 at 4–13 ("Compl.") ¶ 2.) Akstrom is a Canadian company that distributes products to retail stores. (*Id.* ¶ 3.) In March 2020, Akstrom entered into a contract with KMG for KMG to act as a sales representative for Akstrom with Sam's Club and Walmart. (*Id.* ¶ 6; ECF No. 1-1 at 14 (the "Agreement").) The Agreement provided

that "Jennifer Olivero & the [KMG] team will work to develop and increase Akstrom's sales to Sam's Club and Walmart." (Agreement.) The Agreement also required KMG to "get new commitments, increase purchase agreements and purchase orders," and to provide Akstrom with feedback on orders. (*Id.* (cleaned up).) In return, Akstrom would pay KMG a commission of one percent of all sales to Walmart and Sam's Club. (*Id.*) Under the Agreement, any disputes were to be governed by law of Quebec, Canada. (*Id.*)

In the following weeks, KMG began performing under the Agreement—it represented Akstrom, and Akstrom made tens of millions of dollars in sales to Walmart and Sam's Club. (Compl. ¶¶ 7, 9.) In May, KMG sent Akstrom an invoice for $221,082.40, the commission that KMG alleges Akstrom owed. (*Id.* ¶ 13.) Akstrom refused to pay, instead sending a letter to KMG purporting to terminate the Agreement. (*Id.* ¶¶ 14–15.) The reasoning Akstrom gave for this action was that it discovered that Jennifer Olivero, whose services Akstrom had initially sought, was not permitted to represent Akstrom with Walmart and Sam's Club. (*Id.* ¶ 16; ECF No. 11 ¶¶ 10, 19.)

In June 2020, KMG sent a demand letter to Akstrom. (ECF No. 17-1, Ex. A.) Counsel for KMG and Akstrom discussed settlement, but roughly three weeks after KMG sent the demand letter, Akstrom filed suit in a Quebec court, seeking a declaratory judgment that the Agreement is null and void ("Quebec Action"). (ECF No. 17 ("Hall Decl.") ¶¶ 3–10; ECF No. 11-1, Ex. B.) Though it was initially unaware of the Quebec Action, when it discovered it, KMG filed this suit in Minnesota state court the following

day. (Compl.) The Complaint includes claims for violation of the Minnesota Termination of Sales Representative Act ("MTSRA"), breach of contract, violation of Minnesota Statutes Section 181.145 for failure to provide prompt payment of commission to salespeople, and unjust enrichment. (Compl. ¶¶ 25–51.) Akstrom removed the case to federal court. (ECF No. 1.)

Akstrom now moves to dismiss KMG's Complaint. (ECF No. 7.) Akstrom claims that: the Court does not have personal jurisdiction over it; the Court should dismiss the suit under the international comity doctrine; this is not the correct forum for this action based on *forum non conveniens*; and, in the alternative, the Complaint does not state a claim upon which relief may be granted. (*Id.*) Because the Court finds Akstrom's arguments unavailing, it denies Akstorm's motion to dismiss.

## ANALYSIS

### I.     Personal Jurisdiction

The Court will not dismiss KMG's claims for lack of personal jurisdiction so long as the pleadings, viewed in the light most favorable to KMG, are sufficient to support the exercise of jurisdiction over Akstrom. *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). The Court is not limited to the pleadings, and it may "inquire . . . into the facts as they exist." *Stevens v. Redwing*, 146 F.3d 538, 543 (8th Cir. 1998). "A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process

Clause." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) (quotation omitted). Because Minnesota's long-arm statute permits the Court to exercise personal jurisdiction to the full extent of due process, the two prongs of the analysis collapse into a single inquiry: whether exercising personal jurisdiction over Akstrom offends due process. *Pederson v. Frost*, 951 F.3d 977, 980 (8th Cir. 2020). To comport with due process, a non-resident defendant must have "minimum contacts" with the forum state such that exercising jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010).

There are two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1779–80 (2017). For a corporation, general jurisdiction exists where the corporation is at home—usually where it is incorporated and where it is has its principal place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). KMG does not argue that the Court has general jurisdiction over Akstrom, nor could it—Akstrom is a Canadian corporation with its principal place of business in Montreal, Canada. (Compl. ¶ 3.)

Thus, specific jurisdiction is the inquiry, and the Court must determine if Akstrom has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995) (quoting *Int'l Shoe*

4

*Co. v. Washington*, 326 U.S. 310, 316 (1945) (alteration original)). To assess whether a defendant has minimum contacts with the forum state, the Eighth Circuit uses a five-factor test—it looks to "(1) the nature and quality of defendant's contacts with the forum state; (2) quantity of contacts; (3) source and connection of the cause of action with those contacts; and to a lesser degree, (4) the interest of the forum state; and (5) the convenience of the parties." *Id.* at 1432 (footnote omitted).

Akstrom has had sufficient contacts with Minnesota to establish specific jurisdiction over it. First, Akstrom negotiated and entered into a contract with a Minnesota company. (Compl. ¶ 6; ECF No. 16 ¶¶ 3–4.) Reaching out and contracting with a party in the forum state can be a sufficient contact to establish specific jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479–80 (1985). That is exactly what Akstrom did here—it negotiated with KMG in Minnesota via phone and email. (ECF No. 16-1, Ex. B; *id.* ¶ 3.) Thus, the "quality and nature" of the Akstrom's contacts with Minnesota were not "random," "fortuitous," or "attenuated." *Burger King Corp.*, 471 U.S. at 480. (citations omitted).

Akstrom argues that it was only contracting for the services of Jennifer Olivero, a KMG employee and Arkansas resident. (ECF No. 9 at 10.) While this may have been Akstrom's primary motivation for contracting with KMG, the fact remains that it negotiated with and entered into a contract with KMG as a company, rather than with Olivero herself. In fact, when Akstrom reached out to Olivero directly, she told Akstrom

5

that any contract for her services would have to go through KMG. (*Id.*; ECF No. 11 ¶ 11.) After executing the Agreement, Michel Fischer, Akstrom's CEO, told Kinneberg that he was looking forward to working with "you [Kinneberg] an[d] Jennifer [Olivero] on this new collaboration." (ECF No. 16-1, Ex. A at 1.) Akstrom contemplated not only working with Olivero, but also Kinneberg and KMG.

Akstrom also argues that although it negotiated with KMG, there is no guarantee that the KMG personnel with whom it negotiated were located in Minnesota during negotiations. Although Kinneberg had a Minnesota area code and an email signature with a Minnesota address, he could have been negotiating with Akstrom from anywhere, such as, as Akstrom's counsel suggested at the hearing, a beach in Florida. Such speculation about where a party may have been located during negotiations is not an aspect of the Eighth Circuit's personal jurisdiction analysis. *See Wessels, Arnold & Henderson*, 65 F.3d at 1432. Even if the Court were to indulge this speculation, Akstrom cannot so easily escape its negotiations and contract with a Minnesota company.

Aside from negotiating and entering into the contract, performance was also due in Minnesota. Akstrom was required to pay a one percent commission to KMG, and this money, if it had been paid, would have gone to a bank account located in Minnesota. (ECF No. 16-1, Ex. C.) Further, the event on which this suit is largely based—Akstrom's termination of the Agreement—occurred in Minnesota. Akstrom purported to terminate the Agreement in a letter addressed to KMG, and this letter was sent, via email, to

Minnesota. (ECF No. 16-1, Ex. D.) In sum, Akstrom's contacts with Minnesota were not "random, fortuitous, or attenuated" and requiring Akstrom to defend itself in Minnesota does not offend (and in fact, supports) "traditional notions of fair play and substantial justice." *Creative Calling Sols.*, 799 F.3d at 980–82.

## II.     International Comity and the First-Filed Rule

Akstrom next argues that the Court should dismiss or stay this case pending resolution of the Quebec Action. (ECF No. 9 at 12–27.) Even assuming the international comity doctrine would justify staying or dismissing this case, Akstrom's apparent bad faith in filing the Quebec Action renders the doctrine inapplicable.

Deference based on international comity is fact-specific, so "a precise definition remains elusive." *J.Y.C.C. v. Doe Run Res., Corp.*, 370 F. Supp. 3d 1031, 1038 (E.D. Mo. 2019). Deferring to a foreign proceeding is a form of abstention. *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1237 (11th Cir. 2004). In general, the practice of staying or dismissing a case based on international comity is meant to "promote cooperation and reciprocity with foreign lands." *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997). This is a "rule of 'practice, convenience, and expediency' rather than of law," and does not have "the force of an imperative or obligation." *Id.* (quoting *Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971)). It is axiomatic that federal courts generally have a "virtually unflagging obligation . . . to

exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

Courts consider multiple factors in deciding whether to dismiss or stay a case based on international comity: "the similarity of parties and issues, the adequacy of the alternative forum, the convenience of the parties, the promotion of judicial efficiency, the possibility of prejudice, and the temporal sequence of filing." *Northstar Diamond, Inc. v. Azran*, No. 04-CV-3279 (RHK/JSM), 2004 WL 2757910, at *3 (D. Minn. Nov. 30, 2004) (citing *MLC (Bermuda) Ltd. v. Credit Suisse First Bos. Corp.*, 46 F. Supp. 2d 249, 251 (S.D.N.Y. 1999)). Consideration of these factors, however, is unnecessary in light of the reason there is a parallel suit in Canada in the first place—Akstrom's apparent bad faith.

"[A] federal court should not abstain if there is a showing of 'bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate.'" *Plouffe v. Ligon*, 606 F.3d 890, 892–93 (8th Cir. 2010) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982)). Here, after KMG's counsel sent Akstrom the demand letter, Akstrom's counsel informed KMG's counsel that he would be out of the office for the next two weeks and told KMG's counsel to "keep this matter in abeyance until then." (Hall Decl. ¶¶ 2–3; ECF No. 17-1 Exs. A, B.) After some back and forth, on July 13, Akstrom's counsel told KMG's counsel that Akstrom would like to discuss settling the dispute. (*Id.* ¶ 8.) The parties agreed to

8

speak on July 15. (*Id.* ¶ 9.) On July 14, however, Akstrom filed an originating application in a Quebec court. (*Id.* ¶ 10.)

In light of this order of events, the Court declines to apply the international comity doctrine. Applying the doctrine would permit Akstrom—who convinced KMG to hold its claim in abeyance while it filed suit in Quebec—to benefit from its deception and manipulation.

Akstrom heavily relies on the fact that it filed the Quebec Action before KMG filed this action. To the extent that Akstrom's first-filed argument differs from its international comity argument, this argument also fails. Typically, when two actions concerning the same facts are pending in two different courts, the action should proceed only in the court where jurisdiction first attached. *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir. 1990) (citation omitted). This is not a "rigid, mechanical, or inflexible" rule, but courts should apply it unless compelling circumstances dictate otherwise. *Id.* at 488–89 (quotation omitted); *see also Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993) (explaining that the first-filed rule is "to be applied in a manner best serving the interests of justice"). Further, this rule is not limited to cases pending in another domestic jurisdiction; it also applies when a parallel suit is pending in a foreign jurisdiction. *Northstar Diamond,* 2004 WL 2757910, at *3 (citing *MLC (Bermuda) Ltd.*, 46 F. Supp. 2d at 251).

There is no dispute that Akstrom filed the Quebec Action before KMG filed this suit. (*Compare* ECF No. 11-1, Ex. B, *with* Compl.) Here, however, there are exceptional circumstances that justify not applying the first-filed rule. The rule is rendered inapplicable when the party who filed first has taken "misleading [and] egregious" actions, such as convincing the party who did not file first to postpone filing suit until the first-filing party took some other action. *U.S. Fire. Ins.*, 920 F.2d at 489 (citing *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599 (5th Cir. 1983)). Further, two "red flags" can merit disregarding the first-filed rule: first, when the first-filing party was on notice that the other party was considering filing suit, and second, when the first-filed suit is one for a declaratory judgment. *Nw. Airlines*, 989 F.2d at 1007. Akstrom's actions here raise both flags—Akstrom's Quebec suit was for a declaratory judgment, and Akstrom knew that KMG intended to file suit. (ECF No. 11-1, Ex. B at 6 (requesting that the Quebec court declare the Agreement is null and void); ECF No. 17-1, Ex. A at 4 (informing Akstrom that KMG would file suit if Akstrom did not pay the amount it owed).) The Court will not defer to the Quebec Action based on the first-filed rule.

### III.    *Forum Non Conveniens*

Akstrom next argues that this case should dismissed based on *forum non conveniens*. (ECF No. 9 at 27–35.) Under the doctrine of *forum non conveniens*, a court can decline to exercise jurisdiction and dismiss a case when it would have been more appropriately brought in a different jurisdiction. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*,

10

648 F.3d 588, 597 (8th Cir. 2011). To determine whether to dismiss a case under *forum non conveniens*, a court considers public and private factors. *Id.* Private factors include the residences of the parties, location of key witnesses and evidence, and the plaintiff's ability to litigate in a foreign jurisdiction. *Reid-Walen v. Hansen*, 933 F.2d 1390, 1394–99 (8th Cir. 1991). Public interest factors include judicial economy, a jurisdiction's interest in the dispute, and the forum state's familiarity with the governing law. *K-V Pharms.*, 648 F.3d at 597 (citing *Gulf Oil*, 330 U.S. at 508–09). *Forum non conveniens* is to be applied sparingly and only when "the balance is strongly in favor of the defendant." *Id.* at 597–98. Otherwise, the plaintiff's choice of forum should be respected. *Id.* The defendant bears the burden of persuasion to establish that *forum non conveniens* applies. *Id.*

The private factors do not support dismissing this case. KMG is a Minnesota company. (Compl. ¶ 2.) Third-party witnesses are likely to be located in the United States and traveling to Minnesota would be easier than traveling internationally. Additionally, litigating in Quebec would prejudice KMG, because it would be more difficult for it to subpoena witnesses in the Quebec Action.

The public interest factors similarly support a conclusion that *forum non conveniens* does not apply here. Minnesota has a substantial interest in the resolution of this case. At the core of this dispute is a Minnesota sales representative that alleges it has not been paid commission owed to it. Minnesota's interest is evidenced by the state's law protecting its sales representatives. Minn. Stat. § 325E.37. And aside from Minnesota's

interest in this dispute, a Minnesota court is likely to have a greater familiarity with Minnesota law. Because Akstrom has failed to establish that the public and private factors support dismissal under *forum non conveniens*, this case will not be dismissed.

### IV.     Failure to State a Claim under Rule 12(b)(6)

Finally, Akstrom argues that KMG's complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) requires that the Court dismiss a complaint for failure to state a claim upon which relief can be granted if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must "tak[e] all facts alleged in the complaint as true, and mak[e] reasonable inferences in favor of the nonmoving party." *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014). Although the factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Thus, where a complaint alleges "facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Akstrom's argument for dismissal mainly hinges on its claim that, pursuant to the Agreement, this case is governed by Quebec law and so KMG's claims based on Minnesota law fail. (ECF No. 9 at 39–43.)

The MTSRA protects Minnesota trade representatives by, among other things, requiring notice to terminate a sales representative agreement and giving sales representatives a right to be promptly paid if they are terminated. Minn. Stat. § 325E.37, subdiv. 2; *id.* subdiv. 4. The MTSRA contains an anti-waiver provision, which forbids companies from evading the MTSRA "by including in a sales representative agreement a term or provision, whether express or implied, that includes or purports to include: (1) an application or choice of law of any other state; or (2) a waiver of any provision of [the MTSRA]." *Id.* subdiv. 7(a). Any such term or provision is void and unenforceable. *Id.* subdiv. 7(b); *see Apex Tech. Sales, Inc. v. Leviton Mfg., Inc.*, No. 17-CV-2019 (SRN/HB), 2017 WL 2731312, at *4 (D. Minn. June 26, 2017) ("[M]anufacturers, wholesalers, assemblers, or importers are required to comply with the MTSRA, regardless of choice-of-law provisions.").

The question, then, is whether KMG has alleged that it is a "sales representative" under the MTSRA. *See Automated Telemarketing Servs., Inc. v. Aspect Software, Inc.*, No. 09-CV-1308 (DWF/FLN), 2009 WL 10687809, at *2 (D. Minn. Dec. 17, 2009) ("To survive [defendant's] motion to dismiss [plaintiff's] Minn. Stat. § 325E.37 claim, [plaintiff] must

13

plead facts to show that the Minnesota statute applies.").[1] The MTSRA defines a "sales representative" as someone who "contracts with a principal to solicit wholesale orders and who is compensated, in whole or in part, by commission," and may be a natural person or a business entity *Id.* subdivs. 1(d), 1(c). Two inquiries determine whether KMG has alleged it is a sales representative: (1) whether KMG was paid by commission; and (2) whether KMG "contract[ed] with a principal to solicit wholesale orders." First, the Complaint alleges that KMG was to be paid by commission. (*E.g.*, Compl. ¶ 6.) The Agreement entitles KMG to "a commission of 1% on all sales to Sam's Club and Walmart USA." (Agreement.)

Second, KMG alleges that it contracted with a principal to solicit wholesale orders. The MTSRA defines wholesale orders as "the solicitation of orders for goods by persons in the distribution chain for ultimate sale at retail, and also includes material, component, or part orders for use or incorporation into a product, and later resold." Minn. Stat. § 325E.37, subdiv. 2(f). The Complaint alleges that KMG undertook to represent Akstrom as its sales representative at Walmart and Sam's Club per the Agreement, and that it increased Akstrom's sales to those companies as a result. (Compl. ¶¶ 7–8.) The Agreement required KMG to help "develop and increase" Akstrom's sales to Walmart and Sam's Club, "[g]et new commitments," and to increase purchase orders and purchase

---

[1] This decision predates the MTSRA's 2014 amendment, which added the anti-waiver provision, but it is still instructive regarding the applicable standard.

agreements. (Agreement.) The Court finds that the Complaint's allegations, coupled with the Agreement attached to the Complaint, sufficiently allege facts supporting the application of the MTSRA to the Agreement.

Akstrom contends that KMG was not its "sales representative" under the MTSRA but was merely a liaison between Akstrom and Walmart and Sam's Club. (ECF No. 9 at 38.) It asserts that Olivero and KMG were only to provide consulting services by providing feedback on orders and advising Akstrom how to increase sales. (*Id.*) Akstrom cannot evade the MTSRA by trying to cast KMG's duties under the Agreement in a different light, particularly where the Court must make reasonable inferences in favor of KMG as the nonmoving party. KMG has pled facts that support the conclusion that it was Akstrom's sales representative for purposes of the MTSRA. (Compl. ¶¶ 5–7, 27.)

Because the Complaint adequately alleges that KMG is a sales representative, and thus is entitled to the MTSRA's protections, Akstrom's arguments regarding KMG's claims for a violation of the MTSRA, breach of contract, and unjust enrichment fail. Akstrom's arguments hinge on its contention that Quebec law governs this dispute. The Court has found that the Complaint alleges that the MTSRA applies to the Agreement. If the MTSRA does indeed apply, its anti-waiver provision would void the Agreement's Quebec choice-of-law provision. Minn. Stat. § 325E.37, subdiv. 7(b); *see Hedding o/b/o Hedding Sales & Serv. v. Pneu Fast Co.*, No. 18-CV-1233 (JRT/SER), 2019 WL 79006, at *4 (D. Minn. Jan. 2, 2019) (finding that "Minnesota has a clearly-defined policy of protecting its

sales representatives from agreements purporting to waive the protections of the MTSRA by any means" that "precludes the Court from honoring contractual choice-of-law provisions for sales agreements that were enacted, amended, or renewed after August 1, 2014."). The Court therefore declines to dismiss these claims.

Akstrom makes the same argument about KMG's claim under the Minnesota law requiring prompt payment of commissions to salespeople, Minnesota Statutes Section 181.145. (ECF No. 9 at 42–43.) For the reasons above, that argument fails as well. Akstrom also contends that the prompt payment claim should be dismissed because KMG's personnel are not "commission sales[people]" under Section 181.145. (*Id.* at 42.) Under this statute, a "commission salesperson" is "a person who is paid on the basis of commissions for sales and who is not [an employee of the principal]." Minn. Stat. § 181.145, subdiv. 1. Like the MTSRA, the statute is not limited to natural people; a business entity may be a "commission salesperson." *McClure v. Davis Eng'g, L.L.C.*, 716 N.W.2d 354, 357–58 (Minn. Ct. App. 2006). Under the plain language of the statute, KMG has alleged facts sufficient to support the conclusion that it is a commission salesperson, and thus covered by the statute. First, KMG was "paid on the basis of commissions for sales." Minn. Stat. § 181.145, subdiv. 1; (*e.g.*, Compl. ¶¶ 6, 12, 9, 13; Agreement.) Second, KMG is alleged to be an independent contractor, rather than an employee of Akstrom. (Compl. ¶ 39.) Because KMG has alleged that it is a commission salesperson under the prompt payment statute, KMG's prompt payment statute claim will not be dismissed.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, Akstrom's Motion to Dismiss (ECF No. 7) is DENIED.

Dated: February 22, 2021                BY THE COURT:

                                        s/Nancy E. Brasel
                                        Nancy E. Brasel
                                        United States District Judge